**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| KYLE MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDINAL FINANCIAL CORP., BERNARD H. CLINEBURG, BUDDY G. BECK, MICHAEL A. FARCIA, WILLIAM E. PETERSON, STEVEN M. WILTSE, WILLIAM J. NASSETTA, SIDNEY O. DEWBERRY, WILLIAM G. BUCK, J. HAMILTON LAMBERT, ALICE M. STARR, BARBARA B. LANG, AND UNITED BANKSHARES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. _______________<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Kyle Miller ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of Cardinal Financial Corporation ("Cardinal" or the "Company") against Cardinal's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for breaches of fiduciary duties, and their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2. On August 18, 2016, United Bankshares, Inc. ("United") and the Company announced that they had entered into a definitive agreement on August 17, 2016 ("Merger

Agreement”) under which United will acquire all of the outstanding shares of Cardinal in an all-stock transaction (the “Proposed Transaction”). If consummated, Cardinal stockholders will receive 0.71 shares of United stock for each share of Cardinal stock that they own (“Exchange Ratio”). The Proposed Transaction was valued at approximately $912 million at the time of the announcement.

3. On December 9, 2016, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the “Registration Statement”) filed with the United States Securities and Exchange Commission (“SEC”) in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the “1934 Act”) in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of Cardinal common stock.

9. Cardinal is a corporation organized and existing under the laws of the State of Virginia. The Company maintains its principal executive offices at 8270 Greensboro Drive, Suite 500, McLean, Virginia, 22102.

10. Defendant Bernard H. Clineburg ("Clineburg") has served as the Company's Chairman since 2006 and served as the CEO between 2006 and January 2016.

11. Defendant William J. Nassetta ("Nassetta") has been a director since 2012.

12. Defendant Alice M. Starr ("Starr") has been a director of the Company since 2001.

13. Defendant Steven M. Wiltse ("Wiltse") has been a director of the Company since 2012.

14. Defendant B. G. Beck ("Beck") has been a director of the Company since 2002.

15. Defendant William G. Buck ("Buck") has been a director of the Company since 2002.

16. Defendant Sidney O. Dewberry ("Dewberry") has served as a director of the Company since 2002 and is Lead Director.

17. Defendant William E. Peterson ("Peterson") has been a director since 2003.

18. Defendant Miguel A. Garcia ("Garcia") has been a director since 2003.

19. Defendant J. Hamilton Lambert ("Lambert") has been a director since 1999.

20. Defendant Barbara B. Lang ("Lang") has been a director of the Company since February 2014.

21. Defendants Clineburg, Nassetta, Starr, Wiltse, Beck, Buck, Deberry, Peterson, Garcia, Lambert, and Lang are collectively referred to as Individual Defendants and/or the Board.

22. Defendant United is a West Virginia corporation with its corporate headquarters located at 500 Virginia Street, East, Charleston, West Virginia, 25301.

## CLASS ACTION ALLEGATIONS

23. For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of Cardinal stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

24. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

25. The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of August 1, 2016, Cardinal had 32,460,013 shares of common stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

26. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

a. whether the Individual Defendants have breached their fiduciary duty in connection with the material omissions in the Registration Statement;

b.

c. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

d. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

27. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

28. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

30. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

31. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

32. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background and Potential for Growth

33. Cardinal is a financial services holding company headquartered in Tysons Corner, Virgina. Cardinal's subsidiary, Cardinal Bank, has locations throughout the Washington Metropolitan region. Cardinal also operates George Mason Mortgage, LLC, a residential mortgage lending company operating in Virginia, Maryland, and the District of Columbia.

34. The results from the most recent quarterly earnings report, announced on October 19, 2016, revealed a rapidly growing regional bank. Net income had increased from $15.9 million in the third quarter of 2015 to $22.4 million for the third quarter 2016. Total assets had increased by 9% over the previous year, while customer deposits had grown by 10%. Loans held for investment grew to $3.22 billion versus $2.92 billion a year ago, an 11% increase.

35. Cardinal's operating segments showed significant growth as well. Its mortgage banking subsidiary, for example, reported net income of $2,816,000 in the third quarter of 2016 compared to net income of only $631,000 in the third quarter of 2015.

36. Defendant Clineburg praised the results, stating

> The quarterly results show improving profitability metrics while maintaining pristine asset quality levels. Increased balances in the loan portfolio combined with an increasing net interest margin resulted in revenue growth over both the previous quarter and same quarter last year. George Mason continued to have strong activity as applications for loan originations were almost $1.6 billion, which is reflective of our ongoing commitment to building a quality team of mortgage bankers with deep ties to the realtor and builder communities."

37. But despite the continued growth of the Company as an independent entity, the Board decided to merge with another bank through a sales process that barely tested the waters.

**The Sale Process**

38. Cardinal's search for a merger partner began in December 2015 when the Board authorized senior management to gather information on merger and acquisition activity in the financial services industry.

39. On March 1, 2016, Mr. Clineburg and other Cardinal representatives met with Sandler O'Neill ("Sandler"), a financial advisory firm with a specialty in regional bank merger transactions. Sandler and Cardinal discussed potential merger partners with a view toward a potential business combination. Mr. Clineberg and other Cardinal representatives held further discussions by telephone on March 8, 2016.

40. On April 5, 2016, Mr. Clineburg and the executive committee of Cardinal's board consisting of William G. Buck, Sidney O. Dewberry, and Michael A. Garcia met with Sandler and reviewed a list of potential acquirers that Sandler believed would be interested in a potential merger with Cardinal. Sandler presented on likely price ranges to be offered in a transaction. The executive committee then authorized Sandler to continue identifying potential merger partners, and prepare a confidentiality agreement and dataroom in order to shop the Company to strategic partners. That same day, the Cardinal Board agreed to engage Sandler as its financial advisor for a potential merger.

41. After creating a list and preparing for a solicitation process in late April and early May, Sandler began contacting potential buyers on May 17, 2016. Eighteen potential partners were contacted, and three were provided with nondisclosure agreements. United was the only party that entered into such an agreement and was granted access to Cardinal's dataroom.

42. On May 23, 2016, the CEO of United met with Mr. Clineburg, Mr. Buck, and Sandler to discuss United's interest in a strategic transaction. The parties discussed specific terms, including an all-stock transaction with consideration of 0.71 shares of United common stock per

share of Cardinal common stock, pending further due diligence. At the time of the meeting, this represented $27.32 per share, while Cardinal then traded at $21.76 per share.

43. On May 25, 2016, the Cardinal Board held a telephonic meeting at which it was informed of the ongoing marketing process. It directed Sandler to continue with the process.

44. In late May and early June 2016, Sandler continued to contact financial institutions. The Registration Statement does not disclose how many additional institutions were contacted during this time frame. At the end of its solicitation, one other party was interested in a potential transaction competitive with United's bid, but declined to make an offer due to its own ongoing merger discussions.

45. On June 15, 2016, Sandler updated the Cardinal Board on the marketing process. Following this update, the Board agreed to provide United with 30 days of exclusivity in order to allow preliminary discussions with bank regulatory agencies regarding a potential merger. In early July 2016, United informed Sandler and Mr. Clineburg that United was willing to move forward with a transaction at the originally discussed 0.71 shares of United common stock. Neither Sandler nor the Cardinal Board ever attempted to negotiate for a higher ratio of United common stock or any additional consideration.

46. On July 20, 2016, the Board held a regularly scheduled meeting at which it discussed the United offer. As of July 15, 2016, the offer represented a value of $27.84 per share of Cardinal common stock while the current trading price was $22.98. However, Sandler knew that United intended to raise capital by issuing additional stock in connection with a merger, issuing approximately $200 million of non-cumulative perpetual preferred stock with a dividend of 6.50%. Sandler also discussed the likely cost savings associated with the combination of United

and Cardinal, permitting it to pay a higher premium than any out of market buyer who would not recognize the cost synergies.

47. After discussion, the Board determined that a merger would provide long-term benefits to Cardinal stockholders, but did not direct Sandler or Mr. Clineburg to pursue additional consideration from United.

48. Over the next month, United and Cardinal exchanged draft merger agreements and support agreements providing for Cardinal directors to vote their shares of Cardinal common stock in favor of the merger.

49. On August 14, 2016, the Board held a special meeting at which the Board reviewed the details of the transaction and the related documents. Sandler acknowledged that it could provide a fairness opinion at the suggested price. The Board agreed to meet again on August 17, 2016.

50. On August 17, 2016, the Board met again to consider the merger agreement. After Sandler provide its oral opinion as to the fairness of the transaction, the Cardinal board unanimously agreed to adopt and approve the merger agreement.

51. Later that evening, United and Cardinal executed the definitive merger agreement. The two companies issued a joint press release announcing the transaction before the financial markets opened on August 18, 2016.

52. In order to secure this merger, Defendants have issued a Registration Statement designed to ensure stockholder approval through omissions and misrepresentations.

53. Following the filing of the Registration Statement on December 9, 2016, United filed a Form S-3ASR Automatic Shelf Registration Statement on December 10, 2016 for the purposed of issuing the preferred stock as described in the Registration Statement. On December

16, 2016, United filed a Form 424B2 Preliminary Prospectus Supplement (the "Supplement") to the Form S-3ASR Automatic Shelf Registration Statement. This Supplement states that United will issue 4,330,000 shares of United common stock in lieu of the preferred stock offering described in the Registration Statement, but United has not yet amended the Registration Statement.

**A. The Registration Statement Omits Material Information**

54. On December 9, 2016, United and Cardinal filed a materially incomplete Form S-4 Registration Statement with the SEC. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Registration Statement fails to provide Company shareholders with critical information concerning the process that resulted in the Proposed Transaction, the potential conflicts of interest faced by Sandler, the financial valuation prepared by Sandler in connection with the rendering of its fairness opinion, and the Company's expected future value as a standalone entity as evidenced by the Company's financial projections.

55. Specifically, the Registration Statement fails to provide Cardinal shareholders with the following information regarding the background of the merger and the process taken by the Individual Defendants, the absence of which prevents shareholders from making an informed vote in favor of the Proposed Transaction.:

a. the number of financial institutions contacted by Sandler during the late May, early June 2016 marketing effort undertaken by Sandler. The Registration Statement discloses that Sandler contacted eighteen parties before this effort, but fails to disclose the number contacted during it, apart from noting that one of the parties contacted had an interest but was enmeshed in its own merger discussions;

b. whether any of the parties contacted during the late May, early June 2016

marketing process entered into a confidentiality agreement with Cardinal in order to exchange confidential information, and, if so, whether the confidentiality agreement contained a standstill provision; and

c. whether the Cardinal Board ever pressed for increased merger consideration following United's preliminary offer of 0.71 shares of United common stock.

56. The statements in the Registration Statement are misleading because they provide shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, rendering it unfair to Plaintiff and other members of the class. Without this omitted information, Cardinal shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction.

57. The Registration Statement, as filed on December 9, 2016, also fails to disclose that United intends to issue approximately 4,330,000 shares of common stock in lieu of its disclosed offering of preferred stock. Given the exchange ratio, Cardinal stockholders will receive approximately 23 million shares of United common stock. These additional 4,330,000 shares of United common stock, approximately 18% of the shares to be issued to Cardinal stockholders, will dilute the value of United common stock to an unforeseeable degree. The failure to disclose the issuance of additional shares of United common stock is a material omission because the Registration Statement misleads Cardinal stockholder into believing that United intends to issue only currently untraded shares of preferred stock that would not act to dilute value and voting rights of the class of United common stock. Without this omitted information, Cardinal

shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction.

58. Sandler provided investment banking services to United over the previous two years and “received customary compensation for such services.” Rather than disclose all compensation it received for such services, however, the Registration Statement only states that Sandler received a fee in an amount equal to $350,000 for advising United in its acquisition of Bank of Georgetown. Indeed, Sandler’s engagement with United is ongoing, as it has advised Cardinal “that it may provide, and receive customary compensation for, investment banking services to United Bankshares in the future, including during the pendency of the merger.”

59. The failure to fully disclose this compensation and the nature of investment banking services it contemplates performing for United during the pendency of the merger is a material omission that misleads Cardinal stockholders as to the potential conflict faced by Sandler in preparing the fairness opinion regarding United’s offer.

60. The Registration Statement fails to disclose the methodologies, key inputs, and multiples relied upon and observed by Sandler in preparing its fairness opinion, including:

a. With respect to the *Net Present Value Analyses*, (i) the methodology for determining 2020 earnings multiples ranging from 12.0x to 20.0x and 2020 tangible book values ranging from 160% to 235%; (ii) the methodology for determining the 6.7%-11.7% discount rates applied to the terminal values; and

b. Additionally, the Registration Statement provides that Sandler used a “projected dividend growth rate, as discussed with and confirmed by senior management of Cardinal,” yet does not disclose what this dividend growth rate was.

61. Here, where a no other bidders came forward, these analyses are material and provide a good benchmark by which to judge the consideration obtained in a transaction. Further information on the methodology is material where, as here, the Net Present Value Analyses provide a fairness range with a top price significantly above the proposed consideration. Thus, the details of Sandler's analyses are material to stockholders, and disclosing some, but not all, details misleads shareholders as to the financial adviser's basis for its fairness opinion.

62. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cardinal

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cardinal is liable as the issuer of these statements.

65. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and United**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants and United acted as controlling persons of Cardinal within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Envision and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants and United was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

75. United also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

76. By virtue of the foregoing, the Individual Defendants and United violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and United had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**COUNT III**
**Breach of Fiduciary Duty – Candor**
**(Against All Individual Defendants)**

78. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

79. The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Cardinal stockholders.

80. As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

81. As a result, Plaintiff and the Class members are being harmed irreparably.

82. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 11, 2017

____/s/ Elizabeth K. Tripodi___________
ELIZABETH K. TRIPODI (VSB #73483)
LEVI & KORSINSKY LLP
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: etripodi@zlk.com

*Attorneys for Plaintiff*